IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 1:05-CR-00274 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Ann Aldrich |
| | ) | |
| TORREY HILL, | ) | Magistrate Judge Kenneth S. McHargh |
| | ) | |
| Defendant. | ) | |
| | ) | MEMORANDUM AND ORDER |
| | ) | |
| | ) | |

In this criminal case, the United States of America (the "Government") has charged defendant Torrey Hill ("Hill") with being a felon in possession of a firearm. The firearm was discovered in Hill's vehicle following an alleged shooting in Lorain, Ohio. Hill moved to suppress evidence and a statement obtained by officers of the Lorain Police Department ("LPD") after they stopped Hill and searched him and his vehicle [Docket No. 22]. The court held an evidentiary hearing on Hill's motion to suppress [Docket No. 30], and both Hill [Docket No. 31] and the Government [Docket No. 32] have submitted post-hearing briefs. For the following reasons, the court grants Hill's motion to suppress.

**I.     Background**

On March 25, 2005, Sgt. Jeff Jackson ("Jackson") of the LPD was on patrol traveling westbound on West 23rd Street at Reid Ave in Lorain, Ohio, when he observed shots fired in the area of the Highland Grill, at 341 West 23rd Street. (Hr'g Tr. 15:6-10). As he proceeded in the direction of the shooting, Jackson observed a vehicle heading westbound on West 23rd Street, stopped at Oakdale Avenue, and saw a man hiding in the driveway of 407 West 23rd Street, slightly west of the Highland Grill. (Hr'g Tr. 5:23-6:1). Jackson radioed in, stating that shots had been fired, and that the vehicle he

saw was then heading southbound on Oakdale Avenue. (Hr'g Tr. 9:1-8). Jackson did not include a description of the vehicle in his call on the radio. (Hr'g Tr. 10:7-11, 118:12-14). Instead of pursuing the vehicle, Jackson stopped to investigate the man at 407 West 23rd Street, who turned out to be Joseph Flores. (Hr'g Tr. 13:9-14).

Officer Christopher Colon ("Colon"), also on patrol, was traveling southbound on Oakdale Avenue between West 25th and West 26th Streets at the time Jackson radioed that shots had been fired. (Hr'g Tr. 32:15-16). Colon turned into West 27th Street and made a U-turn so that he was facing Oakdale Avenue in order to spot any cars coming southbound. (Hr'g Tr. 34:5-10). Although the only car he recalled seeing was Hill's white Ford Taurus, Colon did not see Hill's car turn onto Oakdale Avenue from West 23rd Street. (Hr'g Tr. 34:11-13, 48:23-49:16). Colon followed Hill's car as it turned eastbound onto West 28th Street, south onto Reid Avenue, then east onto West 30th Street, and finally as Hill's car pulled into a driveway on West 30th Street. (Hr'g Tr. 35:13-37:6).

Although Colon began following Hill's car on Oakdale Avenue, the dispatch tape only has Colon stating that he was following the car southbound on Reid Avenue from West 28th Street. (Hr'g Tr. 38:14-17). After Hill's car pulled into the driveway, Hill got out. (Hr'g Tr. 42:19-21). Colon, by this time, had his lights turned on and exited his vehicle with his weapon drawn, and ordered Hill to stop. (Hr'g Tr. 52:21-24). Colon testified that his only reason for stopping Hill, whom Colon had not yet identified, was the "shots fired" call from Jackson. (Hr'g Tr. 55:23-56:1). While Colon initially maintained that Jackson responded to his description of Hill's white Taurus with an order to stop Hill's car, Colon later admitted that Jackson only said that Hill's car "might have been" the source of the gunfire. (Hr'g Tr. 62:23-24, 63:21-64:6). Only after Colon had stopped Hill did Colon realize who he was. (Hr'g Tr. 56:6-11).

Officer Dennis Camarillo ("Camarillo") and his partner that evening, Officer Edward Super ("Super"), arrived at the scene after Colon had stopped Hill. (Hr'g Tr. 66:22-67:1). Camarillo then handcuffed Hill and patted him down. (Hr'g Tr. 67:3-10). During the pat-down, Camarillo discovered one live round of ammunition. (Hr'g Tr. 67:19-23). After advising the other officers that he had found a bullet, Camarillo "asked [Hill] if there's anything else that he shouldn't have on him or in the car." (Hr'g Tr. 68:4-10). Hill responded that there was a firearm in the car. (Hr'g Tr. 68:12). However, Camarillo did not inform the other officers about Hill's statement as he had with the bullet he found; he instead placed Hill in the back seat of his police cruiser. (Hr'g Tr. 68:13-14). It is undisputed that Hill was not read his *Miranda* rights prior to Camarillo's questioning.

After Camarillo had handcuffed Hill and got him down to the ground, Colon went to retrieve Hill's passenger from the car. (Hr'g Tr. 79:25-80:3, 87:14-16). According to Super, he approached the car from the driver's side as Colon approached the passenger side. (Hr'g Tr. 89:6-8). Super testified that Hill's passenger was still in the car at the time he discovered the firearm in the car. (Hr'g Tr. 85:18-19). The firearm was not hidden from view at the time Super found it; it was lying on the floor of the car. (Hr'g Tr. 80:4-11).

## II. Discussion

"'Under the Fourth Amendment, there are three types of permissible encounters between police and citizens: consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked some questions; a temporary involuntary detention or Terry stop which must be predicated upon 'reasonable suspicion;' and arrests which must be based on probable cause.'" *United States v. Alston*, 375 F.3d 408, 411 (6th Cir. 2004) (quoting *United States v. Bueno*, 21 F.3d 120, 123 (6th Cir.1994)).

Hill argues that his encounter with the police on March 25, 2005, does not fall into any of the three permissible categories, and that therefore any evidence or statements obtained as a result of the stop or the search of Hill's car, must be excluded as "fruit of the poisonous tree." *United States v. Leake*, 95 F.3d 409, 411 (6th Cir. 1996) (citing *Murray v. United States*, 487 U.S. 533, 536-37 (1988); *Silverman v. United States*, 365 U.S. 505 (1961); *Weeks v. United States*, 232 U.S. 383 (1914)). The Government responds that the pat-down search of Hill was within the context of a proper *Terry* stop, that Hill's statement falls within the public safety exception to *Miranda*, and that the firearm was discovered in plain sight and thus falls within the inevitable discovery exception. While Hill does not dispute that there were outstanding warrants for his arrest on March 25, 2005, he does dispute the Government's contention that the stop was based on "specific and articulable facts" creating reasonable suspicion of criminal activity to justify a stop. *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

Since Colon was the officer who stopped Hill, the court must examine the "specific and articulable facts" available to him at the time he made the stop, and determine whether those facts support a reasonable suspicion of criminal activity. It appears that Colon rested his decision to stop Hill on two facts: (1) that Hill's car was the only car traveling south on Oakdale Avenue at West 27th Street, as one might assume the car Jackson described as turning south onto Oakdale Avenue from West 23rd Street would be traveling, at midnight in a residential neighborhood; and (2) that when Colon radioed in that he had spotted a white Ford Taurus, Jackson told him to stop that vehicle.

However, Colon did not see Hill's car turn from West 23rd Street onto Oakdale Avenue, as he was driving southbound on Oakdale Avenue himself at the time Jackson's call came in. Nor did Jackson ever broadcast a description of the car he saw over the radio. Therefore, at the time Colon was sitting on West 27th Street, facing Oakdale Avenue, all he knew was that a car near the shooting had turned

-4-

onto Oakdale Avenue several blocks earlier. Colon could not tell if the car Jackson saw had made another turn, off of Oakdale Avenue, prior to reaching West 27th. Colon did not know how Hill's car came to be traveling south on Oakdale Avenue, and from which street it had turned onto Oakdale Avenue. More importantly, no witness provided any testimony or evidence indicating how busy a street Oakdale Avenue is, or would have been at midnight on a Friday. The inference the Government wishes the court to draw is that because of the hour and the type of neighborhood, the only reasonable way Colon could reconcile Jackson's call of a car turning south onto Oakdale Avenue from West 23rd Street with seeing Hill's car traveling south on Oakdale Avenue at West 27th would be to suspect that Hill's car was the one Jackson saw. Based on the evidence before the court, there is insufficient evidence for that inference to be drawn or for that inference to support reasonable suspicion.

After Colon saw Hill's car traveling south on Oakdale, he began to follow it. While doing so, Colon radioed that he had spotted a white Ford Taurus traveling south. Jackson responded only that the car "might have been" involved. Again, the Government wishes the court to draw the inference that Jackson's "might have been" would be understood by Colon to mean "stop that car because that's the car I saw." And again, based on the evidence before the court, there is insufficient evidence for that inference to be drawn or for that inference to support reasonable suspicion. If Jackson meant for Colon to stop the white Ford Taurus because that was the car he saw, he could have said so. He did not.

Therefore, the only "facts" Colon had prior to stopping Hill were neither specific nor articulable to support reasonable suspicion that Hill's car was in any way involved in the shooting near the Highland Grill. No description of a car was provided to Colon before he spotted Hill's white Taurus, and no eyewitness positively confirmed that Hill's white Taurus was the same car leaving the scene of the shooting. While it is certainly possible for Colon to have believed that Hill's car was the one

-5-

mentioned by Jackson, he did not know enough at the time of the stop on West 30th Street to reasonably suspect Hill of criminal activity. Therefore, any and all evidence seized from Hill's person and his car as well as statements made by Hill must be suppressed. *United States v. Hudson*, 405 F.3d 425, 438-39 (6th Cir. 2005) (holding that regardless of the presence of a valid arrest warrant, a stop without specific and articulable facts creating reasonable suspicion was not justified under *Terry*, and evidence seized incident to that stop would be suppressed).

The court need not consider the Government's contentions that the public safety exception applies to Hill's statement regarding the firearm, *New York v. Quarles*, 467 U.S. 649, 657-58 (1984), or that the plain view exception applies to the discovery of the firearm in Hill's car, *Horton v. California*, 496 U.S. 128, 136-37 (1990), as the officers in question would not have gathered any of the evidence if not for the violation of Hill's rights during the improper stop, and therefore all of the evidence must be suppressed as "fruit of the poisonous tree." *Leake*, 95 F.3d at 411; *see also United States v. Bishop*, 338 F.3d 623, 626 (6th Cir. 2003) (holding that evidence must be excluded unless the officer was "lawfully positioned" where the evidence "can be plainly viewed").

### III. Conclusion

For the foregoing reasons, the court grants Hill's motion to suppress [Docket No. 22] and orders that all evidence and statements acquired on March 25, 2005 as a result of the stop of Hill be excluded.

IT IS SO ORDERED.

   /s/ Ann Aldrich
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

**Dated: April 19, 2006**